UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
J & J SPORTS PRODUCTIONS, INC.,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Plaintiff,　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　　　 MEMORANDUM & ORDER
　　　　　　-against-　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　　　 15-CV-6546 (ENV) (SJB)
MARGARITA FERREIRAS,　　　　　　　　　　:
LA REINA DEL SUR RESTAURANT & BAR,　　:
INC.,　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Defendants.　　　　 :
------------------------------------------------------------- x

VITALIANO, D.J.

　　　　Plaintiff J & J Sports Productions, Inc. ("J & J") brought this action against Margarita

Ferreiras and La Reina Del Sur Restaurant & Bar, Inc. ("La Reina") alleging unlawful

interception and exhibition of a boxing match between Floyd Mayweather, Jr. and Saul Alvarez

broadcast on September 14, 2013 (the "event"). *See* Compl., Dkt. 1, ¶¶ 7–20.  Presently before

the Court is a report and recommendation ("R&R") issued by Magistrate Judge Sanket J. Bulsara

recommending that the Court deny J & J's motion for default judgment and issue an order to

show cause why sanctions should not issue.  Dkt. 21.  On December 12, 2018, J & J filed timely

written objections to portions of the R&R.  Dkt. 26.  For the reasons that follow, default

judgment against La Reina is awarded and the R&R is adopted, with modification, as the opinion

of the Court.

Background

Notwithstanding defendants' defaulted status, the Court presumes the familiarity of the parties with the procedural history and underlying facts of this case.  For purposes of the present motion, the following facts are pertinent and are deemed to be true.  J & J is a California corporation that purchases the rights to exhibit closed-circuit, pay-per-view television events and licenses those rights to bars, clubs, restaurants and the like for a fee.  Compl. ¶¶ 4, 7.  La Reina is a restaurant and bar located in Queens, and Ferreiras is alleged to be one of its "officer[s], director[s], shareholder[s] and/or principal[s]."  *Id.* ¶ 5.  J & J alleges that it had purchased the exclusive right to exhibit and distribute the event throughout the New York area, including in Queens.  *Id.* ¶¶ 7–8.  It also alleges that on the evening of September 14, 2013, La Reina and Ferreiras intercepted and exhibited the event without first contracting with J & J, thereby infringing upon J & J's exclusive rights and avoiding proper payment to it.  *Id.* ¶¶ 13–16.  J & J brought the instant action on November 16, 2015.  Neither La Reina nor Ferreiras has appeared.

Legal Standard

In reviewing a report and recommendation of a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  Further, a district judge is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R.

Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Arista Records, LLC v. Doe 3*, 604 F.3d 110,

116 (2d Cir. 2010).  But, as to "those portions of the report to which no timely objection has been

made, a district court need only satisfy itself that there is no clear error on the face of the record"

in order to accept it.  *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF), 2014 WL 4635575, at *2

(S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL

2001439, at *4 (S.D.N.Y. July 8, 2009)).

Discussion

I.     Liability under § 605(a)

  J & J objects first to Judge Bulsara's finding that it failed to sufficiently allege a satellite

violation under 47 U.S.C. § 605(a), which is part of the Federal Communications Act of 1934

(the "Act").  The Court reviews this objection *de novo*.[1]

  Section 605(a) "prohibits the unauthorized use or publication of wire or radio

communications."  *Int'l Cablevision, Inc. v. Sykes* ("*Sykes I*"), 997 F.2d 998, 1007 (2d Cir.

1993).  Since J & J brings suit under the second, third and fourth sentences of § 605(a), which

pertain to radio and satellite communications, it must allege that the communication originated as

a radio or satellite communication.  *Int'l Cablevision, Inc. v. Sykes* ("*Sykes II*"), 75 F.3d 123, 131

---

[1] Judge Bulsara also found that J & J failed to state claims under 47 U.S.C. §§ 553(a)(1) and 605(e)(4).  R&R at 20–28.  J & J has not objected to these findings.  Accordingly, the Court reviews these portions of the R&R for clear error and finds none.

3

n.5 (2d Cir. 1996) ("[I]f it could be proved in a particular case that the interception at issue . . . would not involve any radio-originated communications, only § 553 [of the Act], and not § 605, would be violated in that case."); *see also Joe Hand Promotions, Inc. v. Terranova*, No. 12-CV-3830 (FB) (VVP), 2014 WL 1028943, at *4 (E.D.N.Y. Mar. 14, 2014) ("[B]ecause the broadcast of the Fight originated with a radio transmission, the interceptions violated section 605.").

Analyzing this threshold requirement, Judge Bulsara found that J & J's complaint fails to state a claim under § 605(a) because it is devoid of any fact from which to conclude that the broadcast originated as a radio or satellite communication. R&R at 16, 19. While the complaint does allege defendants used "electronic decoding equipment and satellite coordinates" to receive the signal, Compl. ¶¶ 33–34, Judge Bulsara reasoned that such allegations are "simply not a statement that the [e]vent that was intercepted and broadcast . . . was a satellite transmission." R&R at 17. Judge Bulsara acknowledged that some courts in this district have held J & J's allegations to be sufficient, but he found the reasoning in those opinions too conclusory to be persuasive. *Id.*

In its objection, J & J latches on to the case law dismissed by Judge Bulsara. It points to several decisions in this district finding references to "electronic decoding equipment and satellite coordinates" sufficient to state a claim under § 605(a). Pl.'s Mem. at 4–5. It also flags two cases where the undersigned adopted R&Rs affirming such allegations to be sufficient on clear error review. *Id.* (citing *J & J Sports Prods., Inc. v. Classy Grill, Inc.*, No. 10-CV-1144

4

(ENV) (RLM), 2010 WL 6802748, at *2 (E.D.N.Y. Oct. 12, 2010), *report and recommendation adopted*, No. 10-CV-1144 (ENV) (RLM), 2011 WL 2469847 (E.D.N.Y. June 20, 2011); *J & J Sports Prods., Inc. v. Meson de Colombia, Inc.*, No. 10-CV-1142 (ENV) (ALC), 2010 WL 4791771, at *2 (E.D.N.Y. Oct. 7, 2010), *report and recommendation adopted*, No. 10-CV-1142 (ENV) (ALC), 2010 WL 4789964 (E.D.N.Y. Nov. 18, 2010)).  Aside from pointing to supportive precedent, J & J also claims that "[i]n default situations, all reasonable inferences should be drawn in favor of the prevailing party," and that the Court should therefore infer a satellite violation based on the complaint's reference to § 605(a) coupled with its references to decoding equipment and satellite coordinates.  *Id.* at 9–10.

J & J's objection is well-taken.  Most compelling is the large collection of cases in this district holding that essentially identical allegations are sufficient to state a claim under § 605(a). *See, e.g.*, *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505 (NGG) (PK), 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (noting "[c]ourts in this jurisdiction have consistently found that such allegations are sufficient to establish liability under Section 605(a)" and collecting cases); *J & J Sports Prods., Inc. v. Chulitas Enter. Corp.*, No. 12-CV-3177 (JS) (WDW), 2014 WL 917262, at *3 (E.D.N.Y. Mar. 10, 2014) ("Although the complaint does not explicitly state that a satellite transmission was intercepted, it does allege that electronic decoding equipment and satellite coordinates were necessary to receive the signal for the event. This type of allegation has been found to be sufficient to form the basis for liability under

Section 605." (internal citations omitted)).  In stark contrast, the Court has found only a single

case, of recent vintage and unprompted by any change in controlling precedent, in which such

allegations were found to be insufficient on a motion for default judgment.  *See J & J Sports*

*Prods., Inc. v. Nacipucha*, No. 17-CV-1186 (AMD) (SJB), 2018 WL 2709222, at *5 (E.D.N.Y.

May 18, 2018), *report and recommendation adopted*, No. 17-CV-01186 (AMD) (SJB), 2018 WL

2709200 (E.D.N.Y. June 5, 2018).[2]

At the same time, as Judge Bulsara rightly observed, the cases that find references to

decoding equipment and satellite coordinates sufficient to state a claim do so in a rather

conclusory manner.  Indeed, they all seem to stem from the approach taken in *Kingvision Pay-*

*Per-View, Ltd. v. Jasper Grocery*, in which the court, without explanation, inferred from the fact

that "'electronic decoding equipment and satellite coordinates [were] necessary to receive the

signal'" that "the broadcast originated with a radio transmission."  152 F. Supp. 2d 438, 440

(S.D.N.Y. 2001).

Nevertheless, despite the limited explanation in those cases, references to decoding

equipment and satellite coordinates do suggest undeniably that the broadcast originated from

---

[2] Judge Bulsara also compares this case to *J & J Sports Prods., Inc. v. Paucar*, No. 17-CIV-05358 (RJD) (VMS), 2018 WL 4501057, at *5 (E.D.N.Y. July 16, 2018*), report and recommendation adopted*, No. 17-CV-05358 (RJD) (VMS), 2018 WL 4494874 (E.D.N.Y. Sept. 19, 2018).  But while *Paucar* is similar in many respects, unlike the complaint here, the complaint there did not "allege that decoding equipment and satellite coordinates were needed to show the event," nor did it include "any reference to 'satellite' coordinates."  *Id.*

satellite transmissions.  Decoding equipment is commonly used to receive satellite signals

because broadcasters often scramble satellite signals to prevent pirating.  *See, e.g.*, *Sykes II*, 75

F.3d 123, 133 (2d Cir. 1996).  Certainly, moreover, it is not beyond ordinary understanding that

reference to satellite coordinates would likely not be necessary if a satellite were not somehow

involved.  Of course, these references do not establish beyond all doubt that the broadcast

originated via satellite, but a party moving for default judgment is entitled to "all reasonable

inferences in its favor."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon*

*Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).  Because the Court can reasonably

infer that the broadcast originated via satellite from these allegations, and because the vast

majority of courts in this district have done the same, the Court finds that the complaint states a

claim for a violation of § 605(a).[3]   Accordingly, J & J's objection is sustained, and the R&R is

modified to reflect this Order.  Default judgment against La Reina must be awarded.

II.      Individual Liability

        J & J also objects to Judge Bulsara's finding that the complaint fails to establish

---

[3] Judge Bulsara also reasoned that J & J's pleading of a violation under § 553 in the alternative
suggests the broadcast did not originate from satellite because § 553 "applies only to cable, not
satellite, communications."  R&R at 17–18.  But, in truth, as Judge Bulsara acknowledges in
another portion of the R&R, broadcasts may be covered by both § 553 and § 605 if they originate
as a satellite communication but are eventually transmitted via cable.  R&R at 23 n.24; *see also*
*Sykes II*, 75 F.3d at 133 ("Section 605 applies to a considerable body of radio transmissions to
which § 553 is inapplicable, while § 553 applies to any transmissions via cable, whether or not
they originate as radio transmissions.  Although the resulting interplay and overlap between §§
553 and 605 may not demonstrate 'a convenient and inviting sense of order,' it is for Congress,
not the courts, to address any perceived resulting disorder." (internal citations omitted)).

individual liability against Ferreiras.  Pl.'s Mem. at 6.  The Court reviews this objection *de novo*.

In line with case law that is well-established, Ferreiras may be held liable for the actions of La Reina through either contributory liability or vicarious liability.  *J & J Sports Prods., Inc. v. J & O LLC*, No. 17-CV-4180 (ARR) (ST), 2018 WL 3991493, at *3 (E.D.N.Y. Aug. 21, 2018).  To establish contributory liability, J & J must plead that Ferreiras "authorized the violations set forth in the Complaint."  *Id.* (quoting *J & J Sports Prods.*, *Inc. v. Mangos Steakhouse & Bakery,* Inc., No. 13-cv-5068, 2014 WL 2879868, at *5 (E.D.N.Y. May 7, 2014)).  To establish vicarious liability, J & J must plead that Ferreiras had (1) "a right and ability to supervise the violations" and (2) "an obvious and direct financial interest in the misconduct."  *J & J Sports Prods., Inc. v. J & O LLC*, No. 17-CV-4180 (ARR) (ST), 2018 WL 3991493, at *3 (E.D.N.Y. Aug. 21, 2018) (quoting *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 113 (E.D.N.Y. 2011)).

In its complaint, J & J alleges that Ferreiras "is an officer, director, shareholder and/or principal" of La Reina and that her name is on the establishment's liquor license.  Compl. ¶¶ 5, 16–17.  J & J also alleges that Ferreiras "had a right and ability to supervise the infringing activities" and "had an obvious and direct financial interest in the exploitation of the copyrighted materials."  *Id.* at ¶ 5.

Judge Bulsara observed that these allegations are essentially boilerplate recitations of the elements of vicarious liability.  R&R at 25.  In finding such allegations insufficient, Judge

Bulsara cited a horde of cases denying J & J default judgment against individual defendants on this basis. R&R 27–28 & n.25. Judge Bulsara also noted that where the complaint does allege particular infringing actions, those actions are attributed collectively to "defendants," which does not identify any actions taken specifically by Ferreiras, and are therefore also insufficient. R&R at 26.

In response, J & J admits, as it must, that the cases cited by Judge Bulsara "do support [his] ultimate conclusion." Pl.'s Mem. at 6. But, asserting that there is a split of authority in this district and citing two cases coming out the other way, J & J urges the Court to reject Judge Bulsara's finding and follow its preferred approach instead. *Id.* Further, J & J argues that the R&R adopted by this Court in *Classy Grill* also found individual liability "based on even less specific allegations" than those at issue here. *Id.* at 7.

An analysis of the three cases on which J & J relies shows, however, that in those cases J & J had alleged a "close and obvious supervision that [is] not present here." *J & O LLC*, 2018 WL 3991493, at *4. First, in *J & J Sports Prod., Inc. v. McAdam*, J & J alleged that, *on the night of the violation*, the individual defendants had "supervisory capacity and control over the activities occurring within the establishment" and had "close control over the internal operating procedures and employment practices." Dkt. 1 at ¶¶ 11–12, No. 14-CV-5461. Similarly, in *J & J Sports Prods., Inc. v. Welch*, J & J alleged that, *on the night of the violation*, the individual defendant had "supervisory capacity and control over the activities occurring within the

[E]stablishment." No. 10-CV-0159 (KAM), 2010 WL 4683744, at *1 (E.D.N.Y. Nov. 10, 2010); *see also J & O LLC*, 2018 WL 3991493, at *4 (finding *Welch* distinguishable on this basis). Finally, in *Classy Grill*, the holding was based on the undisputed allegation that the individual defendant, in fact, owned the establishment at issue. *Classy Grill, Inc.*, 2010 WL 6802748, at *3. Equivalent facts are not plausibly pleaded in the complaint here upon which J & J demands default.

Indeed, J & J has pleaded no facts demonstrating that Ferreiras authorized the allegedly violative conduct, had the right and ability to supervise violations, or stood to gain from an obvious and direct financial interest. Pointedly, the only two non-conclusory facts it cites are insufficient to establish individual liability.

First, J & J's nebulous reference to Ferreiras's status as a "director, officer, shareholder and/or principal" provides "no evidence of [her] individual control or involvement in the decision to infringe on plaintiff's copyright." *J & O LLC*, 2018 WL 3991493, at *4. Nor does it establish that she had an obvious and direct financial interest, as courts typically require specific allegations of direct financial gain "such as a cover charge on the night of the event" or that the "bar host[ed] a large number of patrons, who would presumably purchase drinks during the broadcast." *LX Food Grocery Inc.*, 2016 WL 6905946, at *3. The complaint is barren of facts suggesting that Ferreiras had such a personal interest or control.

The only other non-conclusory fact pleaded by J & J is that Ferreiras's name is on the

establishment's liquor license.  This too is insufficient to plausibly plead individual liability.

While having her name on a liquor license may suggest that Ferreiras "had a general ability to

supervise the establishment's operations and enjoy[ed] its profits," it does not "suggest either

that [Ferreiras] had anything to do with the decision to display the event on [La Reina's]

televisions screens or that [s]he had an obvious and direct financial interest in the exploitation of

the [e]vent." *J & J Sports Prod., Inc. v. El Ojo Aqua Corp.*, No. 13-CV-6173 (ENV) (JO), 2014

WL 4700014, at *4 (E.D.N.Y. Aug. 29, 2014), *report and recommendation adopted*, No. 13-CV-

6173 (ENV) (JO), 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014).

To cut to the quick, as Judge Bulsara pointed out, there is a mountain of authority casting

a shadow over J & J's claim for individual liability.  J & J has not attempted to explain why this

authority is erroneous, but has merely pointed to a few distinguishable cases.  Accordingly, J &

J's objection on this ground is overruled.

III.    <u>Absence of Licensing Rights</u>

Next comes J & J's objection to Judge Bulsara's finding that it lacks standing to pursue

its claim because it did not plausibly plead that it had a license to exhibit the event, which must

also be evaluated upon *de novo* review.  J & J highlights that its complaint alleges that it paid

substantial fees for the "exclusive rights" to broadcast the Event throughout New York.  Compl.

¶¶ 7–8.  J & J also notes that it alleges that it used the services of "G & G Closed Circuit Events,

LLC" to handle "marketing and sales" and that an establishment could exhibit the event only if it

contracted with J & J or its "sub-licensee" G & G.  Compl. ¶¶ 9–10.  Finally, J & J attached to its motion the "rate card" for the event, which is essentially a flyer describing the who, what, where and when of the event and including pricing details and the number to call for purchase.  Hooten Affirm., Dkt. 19, Ex. 5.  Yet, there is a somewhat discordant note.  The J & J brand appears nowhere on the rate card.  Instead, the rate card provides that licenses must be obtained from "G & G Closed Circuit Events Inc." and states further, "Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY."  *Id.* (emphasis in original).

With this point of departure, Judge Bulsara observed that many courts in this district have found J & J's allegation that it is the exclusive licensor of the event to be contradicted by the rate card, which suggests that G & G is the exclusive licensor.  R&R at 29.  In its older filings, J & J made no mention at all of G & G in its complaints, but after some courts flagged the discrepancy between its complaint and the rate card, J & J added allegations explaining G & G's role as sub-licensee and marketer.  *Id.*  Nevertheless, Judge Bulsara concluded these new allegations "cure[] nothing and create[] only questions."  *Id.*  As Judge Bulsara points out, J & J still alleges its rights are exclusive, and that fact is still contradicted by the language on the rate card suggesting G & G is the exclusive licensor.  *Id.*  Other judges have made the same critique.  Judge Glasser, for instance, found that, despite J & J's new allegations, it had still "ignored" the discrepancy between the rate sheet and the complaint, lacked standing to bring the asserted claims, and came

close to deserving Rule 11 sanctions. *J & J Sports Prods., Inc. v. Exclusive Lounge & Grill Inc.*, No. 15-CV-6534, 2017 WL 1082416, at *3 (E.D.N.Y. Mar. 22, 2017). In another case, Judge Ross, adopting a recommendation from Magistrate Judge Pollak, also found J & J lacked standing and ordered it to show cause why sanctions should not be issued. *J & J Sports Prods., Inc. v. Senor De Chalma Corp.*, No. 15-CV-6648 (ARR) (CLP), 2017 WL 4481164, at *1 (E.D.N.Y. Aug. 25, 2017), *report and recommendation adopted*, No. 15-CV-6648 (ARR) (CLP), 2017 WL 4481165 (E.D.N.Y. Oct. 6, 2017). Subsequently, Judge Ross also ordered J & J to produce the written licensing agreement between J & J and G & G or produce an affidavit explaining why no such agreement exists. *Id.* at *6. Judge Bulsara recommends that the Court order J & J to produce the same evidence here. R&R at 31.

      J & J has responded forthrightly to the gauntlet thrown down by Judge Bulsara. It offers case law supporting a contrary view, as some courts have found J & J's amendments to its complaints plead facts sufficient to support standing and warrant default judgment. For example, in one case, a court in this district explicitly noted that, after J & J had been alerted to the discrepancy in an earlier case, it cured the issue by adding the new allegations:

      Plaintiff has addressed th[e] pleading defect in the present action. In *El Ojo Aqua*, the complaint made no reference to G & G's relationship with J & J. In the present action, by contrast, the Complaint states that Plaintiff "utilized the services of G & G Closed Circuit Events, LLC to handle its marketing and sales."

*LX Food Grocery Inc.*, 2016 WL 6905946, at *2 n.1 (E.D.N.Y. Nov. 23, 2016) (internal citations omitted).  Other courts in this district have come to the same conclusion.  *See, e.g.*, *J & J Sports Prods., Inc. v. Mar Y Las Estrellas Rest. Corp.*, No. 17-CV-1190 (MKB) (ST), 2018 WL 4921656, at *4 n.7 (E.D.N.Y. July 17, 2018), *report and recommendation adopted*, No. 17-CV-1190 (MKB) (ST), 2018 WL 4583489 (E.D.N.Y. Sept. 25, 2018); *J & J Sports Prods., Inc. v. Crazy Willy's Bar*, *Lounge & Rest. Inc.*, No. 17-CV-1192 (NGG) (RML), 2018 WL 3742701, at *1 n.1 (E.D.N.Y. June 28, 2018), *report and recommendation adopted*, No. 17-CV-1192 (NGG) (RML), 2018 WL 3629595 (E.D.N.Y. July 31, 2018).

Further, while J & J acknowledges that Judge Pollak found its allegations to be inadequate and recommended that it be ordered to show cause why sanctions should not issue, it notes that she also ultimately recommended against sanctions because several courts in this district have found J & J's new allegations sufficient to explain the rate card discrepancy.  *Senor De Chalma Corp.*, 2017 WL 4481164, at *5 (finding the new allegations insufficient, but stating "[n]evertheless, the Court finds that plaintiff has made a colorable effort to comply with prior orders.").

On an allied front, presumably in an effort to stop litigation wheel-spinning in this action in which no defendant thought it important enough to appear, much less defend, J & J jumped ahead to produce in its objection papers the documentation produced to Judge Ross that Judge Bulsara recommended J & J be ordered to produce upon adoption of his R&R in this case.

Incorporated into its objection, J & J attached an affidavit explaining the agreement between G &

G and J & J.  Pl.'s Mem., Ex. A.  The affidavit, made by J & J president Joseph M. Gagliardi,

explains that J & J had an oral agreement with G & G under which G & G would "sell closed-

circuit licenses to commercial locations throughout the United States."  *Id.*  For this reason,

Gagliardi explains, "it was G & G (rather than our company) that prepared the Rate Card

evidencing the commercial licensing fees applicable to this particular event."  *Id.*  Gagliardi adds

also that G & G is operated by his son, Nicolas J. Gagliardi.  *Id.*

While the Court agrees with Judge Bulsara that J & J would have been prudent to amend

its complaint further in response to judicial criticism, the Court cannot agree that the rate card

flatly contradicts the allegations in its complaint.  The complaint explains that G & G was a sub-

licensee and "handle[d] its marketing and sales."  Compl. ¶ 9.  It is not unreasonable that, under

such an arrangement, the rate card presented to the general public would state that G & G was

the only entity through which one could order the event.  In any case, especially given its

template nature and the volume of J & J's infringement litigation, J & J's pleading is sloppy, but

if drawing reasonable inferences in its favor, as required, the Court finds that J & J has

sufficiently pleaded that it owned the licensing rights to the event.  Accordingly, J & J's

objection is sustained, and the R&R's finding on this point is modified to reflect the findings

made in this Order.

IV.     <u>Inconsistencies in Auditor Report</u>

In support of its motion for default judgment, J & J attached an affidavit from an investigator, Cosmo Lubrano, who claims to have seen the event on display at La Reina.  Hooten Affirm., Ex. 4.  Lubrano attests that he arrived at La Reina around 12:35 p.m. on September 15, counted approximately 50 people in the establishment, and noticed the event being displayed on two televisions.  *Id.*  He notes that at the time he observed the event, the fight was in its second round.  *Id.*  Judge Bulsara found the Lubrano affidavit to be inconsistent and recommended that default judgment be denied on this ground as well.  J & J's timely objection is reviewed *de novo*.

Judge Bulsara took issue with two claims in Lubrano's affidavit.  First, Judge Bulsara noted that while the complaint alleges that the event took place on the night of September 14, Lubrano's affidavit states that he arrived at La Reina on September 15 at 12:35 *p.m.*, which would have been in the afternoon the next day.  R&R at 33–34.  Second, Judge Bulsara observed that Lubrano has submitted affidavits in other cases, and the timing in his affidavits does not add up.  *Id.*  Specifically, Lubrano claims to have observed the event in Los Toritos Bar in Jackson Heights at 12:07 p.m., *see* Dkt. 11, Ex. B, *J & J Sports Prods. Inc. v. Los Toritos Bar Rest. Inc.*, No. 15-cv-6517., in Senor De Chalma in Jackson Heights at 12:20 p.m., *see* Dkt. 9, Ex. B, *J & J Sports Prods. Inc. v. Senor De Chalma Corp.*, No. 15-cv-6648, and in Emily Bar and Restaurant in Jackson Heights at 12:29 p.m, *see* Dkt. 14, Ex. B, *Emily Bar Rest.*, No. 15-cv-6499.  Judge Bulsara observes that to do this, Lubrano "would have had to visit four locations in 28 minutes,

16

traversed 1.5 to 2.0 miles by foot or car (according to Google Maps and Bing Maps, respectively), all while counting the number of patrons present, becoming familiar enough with the locations to complete an affidavit, and observe the [e]vent on television screens."  R&R at 33–34.  Judge Bulsara found that this "beggars belief and common sense" and "reeks of fraud." *Id.* at 34.

J & J's objection acknowledges the timing discrepancy but claims this timing discrepancy was a scrivener's error.  Pl.'s Mem. at 15.  In support, J & J attaches an affidavit from Lubrano saying as much.  *Id.*; Ex. B, ¶ 7 ("Unfortunately, due to a scrivener's error, the Affidavit should have stated the time as approximately 12:35 AM.").

As for the second but related issue raised by Judge Bulsara, J & J contends that "while the investigator would need to be moving quickly, it is not at [sic] inconceivable to travel 1.5 to 2 miles in 28 minutes."  Pl's Mem. at 16.

With respect to the first point, the error in Lubrano's affidavit indeed appears to be a scrivener's error and has been found to be one by other courts granting default judgment.  For example, in *J & J Sports Prods. Inc. v. Los Toritos Bar Rest. Inc.*, similar flaws appeared in the affiant's affidavit.  No. 15-CV-6517 (SJ) (ST), 2017 WL 4838819, at *1 n.2 (E.D.N.Y. Sept. 11, 2017), *report and recommendation adopted*, No. 15-CV-6517 (SJ) (ST), 2017 WL 4838758 (E.D.N.Y. Oct. 24, 2017) ("The affidavit states that Mr. Lubrano observed the match being watched at 12:07 p.m. on September 15, 2013.  But I consider this a scrivener's error, noting that

the Complaint and the advertisement for the event indicate that the event began on September 14, 2013 at 9 p.m." (internal citations omitted)).  As J & J points out, if Lubrano had properly recorded the time as 12:35 *a.m.*, his affidavit would be consistent with the actual timing of the match, which started at roughly 12:30 a.m.  Pl.'s Mem. at 16; *see also* Steve Busfield, *Floyd Mayweather vs Canelo Alvarez – As It Happened*, THE GUARDIAN, https://www.theguardian.com/sport/2013/sep/15/floyd-mayweather-canelo-alvarez-live (reporting on the last minutes of the pre-fight at 12:36 a.m., the results of first round at 12:40 a.m., and the results of the second round at 12:43 a.m.).

With respect to the second point, the Court finds it conceivable that Lubrano visited the four establishments in 28 minutes.  According to Google Maps, someone starting at Los Toritos and traveling eastbound can, while passing by Senor De Chalma and Emily Bar and Restaurant on the way, arrive at La Reina in 13 minutes by bike and 39 minutes by foot.  Lubrano obviously could not have lingered long at the establishments, but it is possible that, moving quickly, he stopped at each location long enough to take a rough head count and observe whether the event was being displayed on the establishment's televisions.  Accordingly, J & J's objections are sustained on this basis, and the contrary finding in the R&R is modified to reflect the factual findings on this point made in this Order.[4]

---

[4] The Court expresses no view on the propriety of scavenging through affidavits in other dockets to develop factual findings upon which a motion for default judgment is decided.  The Court's

V.      Order to Show Cause

Finally, Judge Bulsara recommended that J & J be ordered to show cause why sanctions

should not be imposed as to a number of issues, including (1) why J & J has failed to adequately

explain why it, and not G & G, has standing to bring these claims (2) what J & J's good-faith,

non-frivolous basis is for alleging violations of § 605(e)(4), (3) why the Lubrano affidavit alleges

facts that are inconsistent with its complaint, and (4) why it continues to bring a claim for

individual liability when its allegations have been found insufficient by numerous courts in this

district.  R&R at 35–36.  This objection to the R&R's collateral recommendation is reviewed *de

novo*.

Paradoxically, even though J & J objects to Judge Bulsara's sanctions-related

recommendation, it has provided in its objection essentially all of the information Judge Bulsara

recommended it be ordered to provide.  With respect to the standing issue, J & J answers that,

after being criticized for failing to explain its business relationship with G & G, it added new and

illuminating allegations, which other courts have found sufficient.  Pl.'s Mem. 10–11.  It has also

attached the affidavit it was ordered to produce by Judge Ross.  *Id.*, Ex. A.  With respect to Judge

Bulsara's point about its baseless § 605(e)(4) claim, J & J acknowledged that there is a judicial

consensus that the provision does not apply in the context of the general claims it brings, but, far

---

own research *dehors* the record was compelled by the nature of the findings made in the R&R on
this point.

more importantly, it has represented that it has stopped bringing such claims and "assures the

Court that this claim will no longer be brought in any future filing absent a specific factual

underpinning." *Id.* at 17.  With respect to the timing discrepancy in the attached affidavit, J & J

has explained that this was a scrivener's error and produced an affidavit from its investigator

attesting to its explanation.  *Id.* at 15–16.  Lastly, as for its interpretation of individual liability

claims against Ferreiras, J & J reiterates its argument that there is a split of authority in this

district on the propriety of such pleadings, yielding a sufficient good faith basis on which to

proceed.  *Id.* at 6–7; *see also Abdelhamid v. Altria Group, Inc.*, 515 F.Supp.2d 384, 392

(S.D.N.Y.2007) ("'When divining the point at which an argument turns from merely losing to

losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.'"

(quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir.1993)).

The Court finds that, in light of J & J's confessions of error and representation of

amended practices, sanctions are not warranted in this case.  This is not to deny, as Judge Bulsara

has chronicled, that J & J has a history of sub-par litigation in this district, but its conduct in this

case does not rise to the sanctionable level.  Most significantly, it does appear that J & J has

made some efforts to amend its pleading style when courts in this district have found it

inappropriate.  In any event, although its pleadings in this case remain vulnerable to criticism,

there are enough plausibly-pleaded allegations to vault the low pleading bar of default

judgment.[5]  Consequently, for the most part, J & J's objection to this recommendation is moot

because J & J has effectively provided the response Judge Bulsara was seeking to compel.  But,

as to its objection to the issuance of a formal order to show cause as recommended by Judge

Bulsara, the objection is sustained, the findings in the recommendation on the issuance of an

order to show cause are modified to reflect the findings made in this Order, and the

recommendation is consequently rejected.

Conclusion

In line with the foregoing, the R&R is adopted with the modifications set forth in this

decision.  J & J's motion for default judgment against La Reina is granted, J & J's motion for

default judgment against Ferrieras is denied and all claims against her are dismissed, and the

order to show cause recommended by Judge Bulsara shall not issue.  J & J is directed to proceed

before Judge Bulsara for an inquest on damages on this claim.

---

[5] J & J comes closest to the line by moving for default judgment under § 605(e)(4), and, for that reason, it is important to spotlight its impropriety as a litigation behavior to be scrupulously avoided.  For a pleading to be frivolous under Rule 11, it must be "'patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands.'"  *East Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting *Park v. Seoul Broad. Sys. Co.*, No. 05-CV-8956 (BSJ) (DFE), 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008)).  For this claim, J & J does not contend it relied on a split of authority; indeed, it admits there is a "consensus . . . that this provision does not apply to end users."  Pl.'s Mem. at 16.  However, Rule 11 sanctions should be "limited to what is 'sufficient to deter repetition of such conduct.'"  *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000) (quoting Fed. R. Civ. P. 11(c)(2)).  J & J has represented that it already stopped adding this claim to its complaints a couple years ago and will not bring it in the future.  Pl.'s Mem. at 16.  That sufficiently satisfies the objective of Rule 11.

So Ordered.

Dated:   Brooklyn, New York
          March 25, 2020

                                              /s/ENV
                                         ————————————————————
                                         ERIC N. VITALIANO
                                         United States District Judge